UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CINDY FRY,

        Plaintiff,                          Hon. Janet T. Neff

v.

                                          Case No. 1:09-cv-915

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/


## **REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.§ 405(g), to review the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

1

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 50 years of age at the time of the ALJ's decision. (Tr. 22, 24). She successfully completed high school and worked previously as an office clerk and purchasing agent. (Tr. 22, 34, 98, 103).

Plaintiff filed for benefits on June 1, 2006, alleging that she had been disabled since December 8, 2005, due to depression and alcoholism. (Tr. 12, 97). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 54-82). On January 8, 2009, Plaintiff appeared before ALJ Patricia Hartman, with testimony being offered by Plaintiff and vocational expert, Sandra Steele. (Tr. 25-53). In a written decision dated March 13, 2009, the ALJ determined that Plaintiff was not disabled. (Tr. 12-24). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**RELEVANT MEDICAL HISTORY**[1]

On December 9, 2005, Plaintiff presented to Sparrow Hospital reporting that "things are out of control." (Tr. 143). Specifically, Plaintiff reported that she was engaging in "excessive

---

[1] Plaintiff has not challenged the ALJ's findings regarding any physical impairments she may experience or the functional limitations resulting from such.

gambling that would lead to her drinking so that she would not have to think about what she has done, which would encourage more gambling." (Tr. 143). Plaintiff reported that she was consuming 6-12 beers daily and spending one hundred dollars ($100.00) daily gambling. (Tr. 154). Plaintiff reported that she was presently taking Effexor, prescribed by her family doctor, but was not participating in any counseling or other psychiatric treatment. (Tr. 155).

Plaintiff reported that she recently consumed "fifteen to twenty Restoril, a couple of Darvocet, 225 mg of Effexor, alcohol and three Tylenol." (Tr. 146). Plaintiff was admitted to the hospital, at which time her GAF score was rated as 45.[2] (Tr. 148). Plaintiff was discharged from the hospital four days later. (Tr. 143). She was diagnosed with: (1) major depressive disorder; (2) alcohol dependence; and (3) compulsive gambling. (Tr. 143). Her GAF score was rated as 60.[3] (Tr. 143). Plaintiff was prescribed Effexor and Wellbutrin, which she tolerated "well." (Tr. 144). On discharge, Plaintiff's prognosis was characterized as "good," as she "showed some insight into her need for treatment, as well as the gambling addiction and the substance abuse." (Tr. 144).

On December 15, 2005, Plaintiff began participating in the Intensive Outpatient Program (IOP) through Sparrow Health System's Behavioral Health and Substance Abuse Services. (Tr. 184). On January 17, 2006, Plaintiff began treating with Dr. Lawrence Domino. (Tr. 242-43). Plaintiff exhibited "improved mood" during treatment and was discharged from the IOP on January 23, 2006. (Tr. 184).

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A score of 45 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

[3] A GAF score of 60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

Two days later, Plaintiff began treating with Margaret Hosmer, Ph.D. (Tr. 205). Dr. Hosmer diagnosed Plaintiff with: (1) major depressive disorder; (2) alcohol dependence; and (3) pathological gambling disorder. (Tr. 204). Plaintiff's GAF score was rated as 32.[4] (Tr. 204).

On May 9, 2006, Dr. Domino reported that Plaintiff "is doing well" and that her "mood is stable." (Tr. 237). The doctor also noted that Plaintiff was not experiencing any side effects from her medication. (Tr. 237).

On August 1, 2006, Dr. Dennis Beshara completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 211-24). Determining that Plaintiff suffers from a depressive disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 212-20). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 221). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. (Tr. 221).

Dr. Beshara also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 207-19). Plaintiff's abilities were characterized as "moderately limited" in five categories. (Tr. 207-08). With respect to the remaining 15 categories, however, the doctor reported that Plaintiff was

---

[4] A GAF score of 32 indicates that the individual is experiencing "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DSM-IV at 34.

"not significantly limited." (Tr. 207-08).

On August 1, 2006, Plaintiff reported to Dr. Domino that she was "doing better." (Tr. 236). Plaintiff reported that she was experiencing "less anger" and was "better able to handle stresses." (Tr. 236). Dr. Domino noted that Plaintiff's mood was "improved" and that she appeared "more calm, less depressed, less anxious." (Tr. 236).

On September 13, 2006, Plaintiff reported her mood as "stable." (Tr. 235). On January 4, 2007, Dr. Domino reported that Plaintiff was "doing well." (Tr. 233). On April 19, 2007, Dr. Domino reported that Plaintiff's mood and affect were "improved." (Tr. 232). On May 17, 2007, Plaintiff reported that her medication was "helpful without side effects." (Tr. 231). Dr. Domino observed that Plaintiff's mood and affect were "stable." (Tr. 231).

On July 12, 2007, Plaintiff reported to Dr. Domino that she felt her "medication to be helpful." (Tr. 451). Dr. Domino reported that Plaintiff's mood and affect were "stable." (Tr. 451). On October 9, 2007, Plaintiff reported that she recently traveled to South Carolina for one month. (Tr. 452). Dr. Domino reported that Plaintiff's mood and affect were "stable." (Tr. 452).

On January 8, 2008, Plaintiff reported to Dr. Domino that she "is doing well." (Tr. 452). On April 8, 2008, Plaintiff reported to Dr. Domino that she "is doing well" and was not experiencing any side effects from her medications. (Tr. 461). Dr. Domino reported that Plaintiff's mood and affect were "stable." (Tr. 461). On June 24, 2008, Dr. Domino reported that Plaintiff's mood and affect were "stable." (Tr. 453).

## **ANALYSIS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from (1) degenerative joint disease of the

left knee; (2) drug and alcohol addiction; and (3) major depressive disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 14-16). The ALJ concluded that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 22-24). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[5] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable

---

[5] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

7

to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[6] subject to the following limitations: (1) she must be able to sit or stand every hour for five minutes; (2) she cannot climb ladders, ropes, or scaffolds; (3) she can occasionally crouch, crawl, or use ramps or stairs; (4) she is limited to simple unskilled work that does not involve maintaining intense concentration, although she is capable of remaining on task; and (5) she is limited to work that requires only minimal contact/interaction with co-workers and the general public. (Tr. 16). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could not perform her past relevant work, at which

---

[6] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

8

point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Sandra Steele.

The vocational expert testified that there existed approximately 13,400 jobs in the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 48-50). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).

       a.      The ALJ Properly Evaluated the Medical Evidence

Plaintiff asserts a single issue on appeal, that the ALJ failed to accord appropriate weight to an opinion expressed by Dr. Domino in a January 20, 2009 letter to Plaintiff's attorney. As indicated above, on August 1, 2006, Dr. Beshara completed a Mental Residual Functional

9

Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. The doctor characterized Plaintiff's abilities as "moderately limited" in five categories and "not significantly limited" in the remaining 15 categories.

In a January 20, 2009 letter to Plaintiff's attorney, Dr. Domino takes issue with Dr. Beshara's report, namely his failure to accord sufficient weight to Plaintiff's subjective allegations. (Tr. 473). Specifically, Dr. Domino faults Dr. Beshara for failing to sufficiently consider Plaintiff's assertion that she experiences "significant impairment in the ability to respond to stress or changes in routine." Dr. Domino faults Dr. Beshara for failing to take into account Plaintiff's assertion that she experiences "rage outbursts against family, friends, neighbors, or others." Dr. Domino faults Dr. Beshara for failing to consider Plaintiff's alleged fear of "crowds or public places." Dr. Domino asserts that Plaintiff's "functional limitations result in a need for special supervision and consideration even if she were given simple or unskilled tasks." The doctor further asserts that Plaintiff "would not be able to perform unskilled tasks independently and effectively in a usual work setting." Plaintiff asserts that because Dr. Domino was her treating physician, the ALJ was obligated to accord controlling weight to his opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of*

10

*Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

The ALJ rejected Dr. Domino's opinion, specifically concluding:

> The psychiatrist's conclusions about the claimant's limitations do not eliminate simple unskilled jobs. There is no medical evidence in the

11

> record to support the psychiatrist's opinion that the claimant would require special supervision in order to perform even simple unskilled work. In fact, the psychiatrist's objective clinical findings outlined in his treatment notes contradict his conclusions described above. The psychiatrist typically noted during the treatment period that the claimant was stable on her medications with some episodes of increased anxiety and depression. The undersigned grants no controlling weight to the psychiatrist's conclusions regarding the claimant's functional limitations.

(Tr. 21-22).

The ALJ's conclusion in this regard is supported by substantial evidence. As the medical evidence detailed above reveals, Plaintiff's emotional impairments are well controlled with therapy and medication, as Dr. Domino's treatment notes make clear. In short, the opinions expressed by Dr. Domino in his January 20, 2009 letter are contradicted by his own treatment notes, as well as the other evidence of record. The record contains no evidence that supports the extreme limitations expressed by Dr. Domino. To the extent that Plaintiff's emotional impairments limit her ability to perform work activities, such limitations are adequately accounted for in the ALJ's RFC determination. Accordingly, the ALJ's decision to accord less than controlling weight to Dr. Domino's opinion is supported by substantial evidence.

## **CONCLUSION**

Accordingly, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Therefore, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C).

Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date: September 30, 2010         /s/ Ellen S. Carmody
                                 ELLEN S. CARMODY
                                 United States Magistrate Judge